IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

FILED BY

JUL 12 2005

Thomas M. Gould, Clerk
U. S. District Court
W. D. OF TN, Jackson

| | |
|---|---|
| TERRY ABELS, as Next Friend and Guardian Ad Litem for Jerry Hunt, )<br>)<br>Plaintiff, )<br>)<br>VS. )<br>)<br>GENIE INDUSTRIES, INC., *et al.*, )<br>)<br>Defendants. ) | No. 1-04-1148-T-An |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, TO CHANGE VENUE

Plaintiff brought this action alleging negligence and strict liability when Jerry Hunt was severely injured while using a man-lift that was designed, manufactured, and distributed by Defendant Genie Industries, Inc.; was rented, leased, or otherwise distributed by Defendant Rental Services Corporation ("RSC"); and was leased to Defendant White Electrical Construction Co. through its subsidiary Duncan Electronic Co. Defendant Genie Industries filed a motion to change venue to the United States District Court for the Eastern District of Tennessee, Southern Division at Chattanooga, which was denied. Before the court is Defendant White Electrical Construction's motion to dismiss for improper venue under 28 U.S.C. § 1391, or, in the alternative, to transfer venue to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendant's motion

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on __07-13-05__

㊷

is DENIED.

## I. Facts

Jerry Hunt was severely injured on July 7, 2003, while operating a Genie-manufactured man-lift. The lift was owned by RSC and leased to White. The incident occurred in Cleveland, Tennessee.[1] The lift that caused the injury, described by Defendants as "a large and unwieldy piece of machinery," Defendant's Motion to Change Venue, at 6, is located in a storage facility in Ooltewah, Tennessee.[2]

As a result of the accident, Hunt sustained a hypoxic brain injuries and requires constant medical attention. Hunt was treated at the Erlanger Hospital in Chattanooga, Tennessee, after the accident and now names over twenty-six (26) physicians and health care providers in Chattanooga as potential witnesses. At the time of the accident, Hunt was a resident of Savannah, Tennessee, and was an employee of Insulation System, Inc., a company owned by his uncle and guardian ad litem, Terry Abels, who lives in Savannah, Tennessee.[3]

Hunt currently resides in Castalian Springs, Tennessee.[4] He receives medical care at

---

[1] Cleveland, Tennessee is in the Eastern District of Tennessee.

[2] Ooltewah, Tennessee is in the Eastern District of Tennessee.

[3] Savannah, Tennessee is in the Western District of Tennessee.

[4] Castalian Springs, Tennessee is located in the Middle District of Tennessee. Defendant's Motion to Transfer Venue states that Hunt currently lives in Castalian Springs, Tennessee; however Plaintiff's response states that Hunt resides in Savannah, Tennessee. Defendant's Motion to Transfer Venue, at 7; Plaintiff's Response to the Motion to Dismiss and/or Transfer Venue, at 7. Plaintiff did not provide any evidence to support this statement.

the Campbell Clinic in Memphis, Tennessee, and has listed seven (7) physicians and health care providers as potential witnesses. Plaintiff also lists as potential witnesses various other healthcare providers from Bradley County Memorial Hospital, Physicians Services in Cleveland, Tennessee, and Associates in Diagnostic Radiology in Cleveland, Tennessee.

Defendants are all multi-state corporations that are registered to do business within the state of Tennessee. In addition, Genie is headquartered in Washington, RSC is organized in Arizona, and White's principal place of business is in Georgia. Genie and RSC do business throughout Tennessee and White does business in several counties in East and Middle Tennessee.[5] Also, White has a listed registered agent for service of process in Memphis, Tennessee.

## II. Law and Analysis

Defendant argues that dismissal for improper venue or a transfer to the Eastern District of Tennessee is appropriate because the alleged accident happened in Cleveland, Tennessee; the machinery involved in the accident is located in Ooltewah, Tennessee; and

---

Defendant included Plaintiff's answers to its interrogatories in which Plaintiff lists three places where he has resided in the last ten years. Plaintiff's Answers to Defendant's First Set of Interrogatories, at 2. Two of these addresses are in Savannah, Tennessee, and one is in Castalian Springs, Tennessee. Id. Plaintiff did not indicate which address is most current, thus, it is possible that Hunt lives in Castalian Springs, Tennessee, or Savannah, Tennessee.

[5] White states that it has a business located in Chattanooga, Tennessee, and that, in the last three years, it has done business in Knox, Blount, Davidson, Polk, Cumberland, Coffee, Rhea, Franklin, Hamilton, Marion, Bradley, and McMinn counties. Aff. of Phillip Childers, at ¶¶ 4, 5. White also states that it is not involved in any projects located in the western part of Tennessee. Aff. of Phillip Childers, at ¶ 5.

3

the bulk of the witnesses identified by Plaintiff are located in the Eastern District of Tennessee. Plaintiff maintains that venue is proper in the Western District of Tennessee pursuant to § 1391 and § 1404(a).

    A.    Whether venue is proper under 28 U.S.C. § 1391.

The general venue statute provides that an action based solely on diversity of citizenship may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

In this case, the Defendants first contend that venue is improper because the cause of action did not arise in this district and it could properly be brought in the Eastern District. However, under § 1391(a)(2), venue is not necessarily proper in only one district. "Rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Setco Enter. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994). Venue would be proper in each district in which a substantial part of the events giving rise to the claim occurred. See Sidco Indus. Inc. v. Wimar Tahoe Corp., 768 F. Supp. 1343, 1346 (D. Or. 1991).

Where the defendant is a corporation, however, specific rules exist for determining

4

venue:

> [A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c). "Thus, determining whether venue exists under this section depends upon whether personal jurisdiction over the corporation exists at the time the action was commenced." Union Planters Bank, N.A. v. EMC Mortg. Corp., 67 F.Supp.2d 915, 918 (W.D.Tenn. 1999). Here, the issue is whether Defendants are subject to personal jurisdiction with the Western District of Tennessee if this district were a separate state.

In a diversity action, the reach of a federal court's *in personam* jurisdiction is governed by the law of the state in which the court is located. Pickens v. Hess, 573 F.2d 380, 385 (6th Cir. 1978). The Tennessee "long-arm" statute, Tenn. Code Ann. § 20-2-214, permits Tennessee courts to exercise jurisdiction over non-residents to the full extent allowed by due process. J.I. Case Corp. v. Williams, 832 S.W.2d 530, 531 (Tenn. 1992). "Due process requires that a nonresident defendant be subjected to a judgment in personam only if he has such minimum contacts with the foreign state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. at 532 (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)).

5

In judging a defendant's minimum contacts, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Even a single contact may provide a sufficient basis for jurisdiction if the contact creates a substantial connection with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18 (1985). Because the essence of the concept of minimum contacts is fair warning, a court must ascertain whether by virtue of the defendant's connection with the forum state, the defendant could "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1980).

In Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit devised a three-part test [6] to determine whether a defendant has the requisite minimum contacts:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381; see also Neogen Corp., 282 F.3d at 889-90.

In this case, although none of the Defendants are headquartered in Tennessee or have

---

[6] The Tennessee Supreme Court has suggested that the Mohasco test is "too restrictive" and proposed a new five-part test. Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985). However, the Sixth Circuit has not recognized this new test, and continues to apply Mohasco. See, e.g., Neal v. Janssen, 270 F.3d 328, 332-33 (6th Cir. 2001); Payne v. Motorists' Mut. Inc. Companies, 4 F.3d 452, 455 (6th Cir. 1993); Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1090 (6th Cir. 1989).

6

their principal place of business here, all three are registered to do business within the state. Genie and RSC do business throughout Tennessee. Specifically, Genie manufactures products for sale, lease, or other distribution to distributors in the Western District of Tennessee and RSC has several retail outlets throughout Tennessee. Although White admits only to having done business in several counties in East and Middle Tennessee, it has a listed registered agent for service of process in Memphis, Tennessee. On these facts, the court finds that Defendants have met the three-part minimum contacts test and are subject to personal jurisdiction in the Western District of Tennessee.

B.   Whether the action should be transferred pursuant to 28 U.S.C. § 1404(a).

Twenty-eight U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has "broad discretion to grant or deny a motion to transfer [a] case." Phelps v. McClellan, 30 F.3d 658, 663 (6th Cir. 1994) (quoting Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986)); see also Van Dusen v. Barrack, 367 U.S. 612, 644 (1964); Nicol v. Koscinski, 188 F.2d 537 (6th Cir. 1951). Transfer of venue pursuant to § 1404(a) is possible even when the current forum is proper under § 1391. Union Planters Bank, 67 F.Supp.2d at 920.

Under § 1404(a), a district court must determine "whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Box v. Ameritrust Texas, N.A., 810 F. Supp. 776, 780 (E.D.

7

Tex. 1992) (citations omitted). A variety of factors should be considered, including the convenience of the parties and potential witnesses, where the operative facts occurred, the location of the documentary evidence, the possibility of prejudice in either the forum or the transfer state, and other public-interest concerns such as "systemic integrity and fairness." See Moses v. Business Card Express, Inc., 929 F.2d 1131, 1136 (6th Cir. 1991); Priess v. Fisherfolk, 535 F. Supp. 1271, 1279 (S.D. Ohio 1982). However, § 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." Van Dusen, 367 U.S. at 645-46. A motion to transfer should be granted only when the balance weighs strongly in favor of transfer. Nicol, 188 F.2d at 537.

The factor which should be given foremost consideration is the Plaintiff's choice of forum. See West Am. Ins. Co. v. Potts, 908 F.2d 974 (TABLE), 1990 WL 104034, *2 (6th Cir. Jul. 25, 1990); Box, 810 F. Supp. at 780-81. That choice should not lightly be disturbed. See Uniprop v. Home Owners Funding Corp., 753 F. Supp. 1315, 1322 (W.D.N.C. 1990).

In the present case, the balance of the aforementioned factors weighs strongly against transferring venue. First, Plaintiff, an individual, chose to bring suit in the Western District of Tennessee. Abels, Plaintiff's guardian ad litem, is a resident of Savannah, Tennessee, and it is unclear whether Plaintiff is also a Savannah, Tennessee resident. At the time of the accident, however, Plaintiff was a Savannah resident and an employee of Insulations Systems, Inc., a company located in the Western District of Tennessee. Defendants, on the

8

other hand, are not residents of Tennessee but are corporations that operate out of many different states. All three Defendants are registered to do business in Tennessee, and RSC and Genie conduct business in the Western District.

Second, when considering the financial situation and physical condition of the parties, it would be easier for Defendants to travel to the Western District than it would be for Hunt and Abels to travel to the Eastern District. Hunt, who was severely injured as a result of the accident, does not earn any income. Abels owns his own business; thus, traveling to the Eastern District would make it difficult for him to continue running his company. In addition, Abels does not have a large discretionary income with which to support himself or Hunt. On the other hand, Defendants are large corporations. As such, Defendants have more financial resources and more man-power to handle this action if it were to remain in the Western District. In order for Defendants to effectively participate in this suit, it would require only a few representatives' participation and it would likely cause very little disruption to the day-to-day business of each company.

Defendants' strongest arguments for transferring venue lies in the fact that the alleged incident occurred in Cleveland, Tennessee, and that the bulk of the witnesses listed by Plaintiff are located in the Eastern District. Defendant cites this court's holding in <u>Returns Distribution Specialist, LLC v. Playtex Products, Inc.</u>, 2003 WL 21244142, *7 (W.D. Tenn.), which stated that "[t]he most significant factor when considering a transfer under § 1404 is the convenience of the witnesses." Here, Plaintiff has identified over twenty-six

9

(26) physicians and healthcare providers from Erlanger Hospital in Chattanooga, Tennessee as potential witnesses. By comparison, Plaintiff has listed only seven (7) other potential witnesses associated with the Campbell Clinic in Memphis, Tennessee. Plaintiff also lists employees of Duncan Electric Company, representatives of RSC, and representatives of Schultz Design as potential witnesses–all of which are identified as living in Cleveland, Tennessee, and thus, in the Eastern District. Defendants have also listed numerous potential witnesses located in the Eastern District, but many of these are described as "unknown employees" or otherwise have no specific information regarding identity.

In contrast, however, Plaintiff argues that the witness disclosures provided under Fed. R. Civ. P. 26 include only individuals who *may* be called as witnesses and are not necessarily those who *will* be called as witnesses. Plaintiff notes that the court should consider the specific witnesses and their likely testimony, rather than the general quantity of witnesses of the party seeking or opposing the transfer. Holiday Rambler Corp. v. American Motors Corp., 254 F. Supp. 137, 139 (W.D. Mich. 1966); see also General Portland Cement Co. v. Perry, 204 F.2d 316, 320 (7th Cir. 1953); Jenkins v. Wilson Forwarding Co., 104 F. Supp. 422, 424 (S.D.N.Y. 1952) ("The party seeking the transfer must clearly specify the key witnesses to be called.... The emphasis must be on this rather than on numbers."); Lake v. Richardson-Merrell, Inc., 538 F. Supp. 262, 271 (N.D. Ohio 1982). In addition, Plaintiff argues that under Fed. R. Civ. P. 45(c) the court may modify a subpoena to provide adequate protections for witnesses traveling over 100 miles to attend

10

trial and it may modify the rules regarding deposing witnesses where the deposition is over 100 miles from the witness' residence or employment. Further, pursuant to Fed. R. Civ. P. 32(a)(3)(B), the deposition of witnesses may be used as testimony at trial if the witness is located more than 100 miles from the location of the trial or hearing. Finally, Plaintiff argues that 28 U.S.C. § 1821 allows for compensation of witnesses for travel expenses and attendance. Plaintiff contends that not all of the witnesses listed are likely to be subpoenaed for trial and that, when necessary, counsel can depose these witnesses at their homes and use their depositions as a substitute for live trial testimony.

In the present case, Plaintiff's most important witnesses, those of Hunt and Abels, are located in the Western District of Tennessee and will not be inconvenienced if this case remains here. Other likely witnesses, such as Hunt's co-workers, are employees of Insulation System and reside in the Western District. In addition, Defendants' witnesses are representatives and employees of large multi-state corporations, and to have them travel to the Western District will not be extremely inconvenient. It is unclear how the representatives of a multi-state corporation would be more inconvenienced by having to travel to the Western District than to the Eastern District. Further, under Rule 45(c) and § 1821, Defendants may depose its witnesses and use their transcripts at trial, or they may reimburse its witnesses for travel time and expenses incurred as a result of testifying at trial. Finally, as argued by Plaintiff, the most likely witnesses will be expert witnesses. These witnesses could just as easily testify in the Western District as they could in the Eastern

District.

Defendants argue that the location of the alleged incident, occurring in Cleveland, Tennessee, weighs strongly in favor of transferring venue to the Eastern District. However, as argued by Plaintiff, the court is not likely to take a trip to the accident site; thus, the most likely evidence of the accident scene will be photographs and witness accounts, and these will be just as convenient to produce at trial in either district. Also, Defendants argue that the fact that the boom lift that allegedly caused Hunt's injuries is located in Ooltewah, Tennessee, supports the argument that the case would more conveniently be litigated in the Eastern District. Defendants claim that the boom is "a large and unwieldy piece of industrial machinery that may be considered immobile." Defendant's Motion to Change Venue, at 6. However, Plaintiff correctly points out that the man-lift was moved from the accident site to the storage facility in Ooltewah, Tennessee; therefore, it is not immobile. If Defendants are capable of moving the man-lift to a storage unit, then they are capable of moving it to the Western District for trial, if necessary.

Here, when balancing the respective parties' locations and feasibility of travel to both the Eastern and Western Districts, the balance tips in favor of retaining the case in the Western District. Hunt and Abels would be greatly inconvenienced if this case were litigated in the Eastern District. Defendants, which are three large multi-state corporations, would not be substantially more inconvenienced if this case were to be tried in the Western District rather than the Eastern District. In addition, the list of witnesses provided do not

necessarily demonstrate that the Eastern District is more convenient because it is uncertain as to which witnesses are likely to be called. Further, the location of the accident and the man-lift--when taking into account Plaintiff's choice of forum, and his financial and physical condition–do not make the Eastern District a more convenient forum.

Defendants have not established the Eastern District will prove more convenient. Accordingly, Defendant White Electrical Construction's motion to dismiss for improper venue, or, in the alternative, to transfer venue to the United States District Court for the Eastern District of Tennessee, Southern Division at Chattanooga, is DENIED.

IT IS SO ORDERED.

_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_11 July 2005_
DATE

13

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 42 in case 1:04-CV-01148 was distributed by fax, mail, or direct printing on July 13, 2005 to the parties listed.

---

Robert Steve Beal
LAW OFFICES OF STEVE BEAL
22 Monroe Avenue
Lexington, TN 38351

Bradford D. Box
RAINEY KIZER REVIERE & BELL
209 E. Main Street
Jackson, TN 38302--114

William E. Godbold
LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC
801 Broad Street
Third Floor
Chattanooga, TN 37402

J. Randolph Bibb
BAKER DONELSON BEARMAN & CALDWELL
211 Commerce St.
Ste. 1000
Nashville, TN 37201

Reggie E. Keaton
FRANTZ McCONNELL & SEYMOUR, LLP
P.O. Box 39
Knoxville, TN 37901

Sandi L. Pack
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
Commerce Center
Suite 1000
211 Commerce St.
Nashville, TN 37201

Marty R. Phillips
RAINEY KIZER REVIERE & BELL
209 E. Main St.
Jackson, TN 38302--114

Charles O. McPherson
LEITNER WILLIAMS DOOLEY & NAPOLITAN
254 Court Ave.
Second Floor
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT